**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**CIVIL ACTION NO. 06-106-JBC**

**MARCELLA C. SHEPHERD,**                                                    **PLAINTIFF,**

**V.**                        **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                       **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (DE 5, 6).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not

decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed

if it is supported by substantial evidence, even though the court might have decided

the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th

Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1,

the ALJ considers whether the claimant is performing substantial gainful activity; at

Step 2, the ALJ determines whether one or more of the claimant's impairments are

"severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly

or in combination, meet or equal a listing in the Listing of Impairments; at Step 4,

the ALJ determines whether the claimant can perform past relevant work; and,

finally, at Step 5 – the step at which the burden of proof shifts to the

Commissioner – the ALJ determines, once it is established that the claimant cannot

perform past relevant work, whether significant numbers of other jobs exist in the

national economy which the claimant can perform.  *See Preslar v. Sec'y of Health*

*& Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a sixty-two-year-old female who has completed college and

has a Master's Degree.  AR 530.  She has past relevant work ("PRW") as a debit

insurance agent.[1]  AR 24.  She alleges disability beginning on September 11, 2000,

as a result of back pain, hypertension, hypothyroidism, and depression.  AR 23, 74-

---

[1]Although the plaintiff has also worked as a high school chemistry teacher,
that job is now so distant in time that the ALJ did not consider it PRW.  AR 24.

76.  The plaintiff filed a claim for Disability Insurance Benefits ("DIB") on March 9, 2001, which was denied initially and on reconsideration.  In an opinion issued on September 15, 2003, Administrative Law Judge ("ALJ") Gregory M. Kayser determined that the plaintiff was not disabled; he specifically found that the plaintiff could perform light work, with some restrictions, and that she could therefore return to her PRW.  AR 40-51.  The Appeals Council, however, granted the plaintiff's request for review and remanded the case to the ALJ because he had failed to allow the plaintiff's counsel sufficient time to respond to a proffer of evidence.  AR 299.

After this remand, ALJ Kayser held another hearing on June 20, 2005.  AR 551-96.  In an opinion issued on August 11, 2005, the ALJ again found that the plaintiff did not suffer from a disability as defined by the Social Security Act.  AR 20-29.  At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity.  At Step 2, the ALJ found that the plaintiff's diabetes mellitus and arthritis in her hips were severe impairments.  The ALJ then determined that her impairments did not meet or equal a listing in the Listing of Impairments at Step 3.  The ALJ found that the plaintiff could perform a limited range of medium work activity, and, based on this conclusion, he determined at Step 4 that the plaintiff could perform her PRW and was therefore not disabled.

### III. Legal Analysis

The plaintiff objects to the ALJ's findings on three grounds.  First, she claims

that the ALJ erred in not finding her disabled following her first hearing.  Second,

she argues that the ALJ improperly credited the opinion of a medical expert, Dr.

Charles Hancock, instead of the opinions of her treating and consulting physicians.

Finally, she claims that the ALJ failed to give sufficient justifications for rejecting

the opinions of her treating physicians.

### A. The ALJ's Failure to Find the Plaintiff Disabled After the First Hearing

As to the plaintiff's first argument, if a person of advanced age cannot do

her PRW and her work skills are not readily transferable to skilled or semi-skilled

work, then she is disabled.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2, tbl. 2, rule

202.06.  The Commissioner points out, however, that the Medical-Vocational

Guidelines are utilized at Step Five of the evaluation process only if it is determined

that the plaintiff cannot perform her PRW.  In this case, the ALJ found that the

plaintiff was not disabled at Step Four of the sequential evaluation process based

on his determination that she could still do her PRW.  Thus, the plaintiff's true

complaint is with the ALJ's finding that she could perform her PRW.

The plaintiff's primary claim of error on this point is that the ALJ improperly

used a hypothetical based on a report by Dr. Byron T. Westerfield.  After examining

the plaintiff, Dr. Westerfield concluded that "it would be difficult for the plaintiff to

drive a car any distance."  AR 275-76.  During the hearing, however, the ALJ

asked Vocational Expert ("VE") Dr. Ralph Crystal a hypothetical question which

assumed an individual for which "driving extended periods of time would be

4

difficult." AR 558. Based on this hypothetical, Dr. Crystal testified that the

hypothetical individual could perform her PRW. *Id.* When asked a similar

hypothetical following the hearing, Dr. Crystal reaffirmed this opinion. AR 121.

Counsel for the plaintiff then sent Dr. Crystal a letter which apparently presented

him with a hypothetical in which the assumed individual was incapable of driving at

all.[2] Dr. Crystal's response to counsel's inquiry is as follows:

> The only difference I could determine in the hypothetical posed by
> Judge Kayser on July 21, 2003 and the hypothetical posed by
> Attorney Hunter on August 21, 2003 is that driving goes from no
> extended driving (Judge Kayser) to no driving (Attorney Hunter). In
> the hypothetical from Attorney Hunter those insurance agent jobs that
> require driving, including the past work of the hypothetical individual
> as she performed it, would be precluded. This is because driving was
> involved in the past work, and if I am interpreting this hypothetical
> correctly, driving is now precluded.

AR 125. Based on this response, the plaintiff claims that the ALJ improperly found

that she could perform her PRW.

The plaintiff's argument is in error because her hypothetical depends on an

unduly narrow interpretation of Dr. Westerfield's opinion. While Dr. Westerfield's

statement that it would be difficult to drive "any distance" could be interpreted to

mean that she could not drive at all, it is equally plausible that he merely meant to

exclude driving for extended distances. In fact, the plaintiff's testimony at the

hearing suggests that Dr. Westerfield's statement was never intended to have the

---

[2]The court was unable to locate a copy of the letter sent by the plaintiff's
counsel to Dr. Crystal. In his first denial of the plaintiff's claim, ALJ Kayser
indicates that he never received it. AR 49-50.

restrictive meaning the plaintiff now attaches to it.  In response to the ALJ's
questioning at the July 12, 2002, hearing, the plaintiff admitted that she drove to
the post office twice a week and to a grocery store ten miles from her home once a
week.  AR 530.  She also stated that one of her doctors, Dr. Allan Halbert,
recommended "limited time driving."  AR 538.  Given this testimony, the plaintiff's
interpretation of Dr. Westerfield's opinion did not provide a reasonable basis for the
assumption in her counsel's hypothetical that she could not drive at all.  ALJ
Kayser's hypothetical question was appropriate based on the evidence in the case,
and his reliance on Dr. Crystal's response was not error.  As a result, ALJ Kayser's
finding that the plaintiff could perform her PRW was supported by substantial
evidence.

The plaintiff also argues that the ALJ's reliance on Dr. Crystal's testimony
was erroneous because it was inconsistent.  At the July 21, 2003, hearing, Dr.
Crystal testified that the plaintiff's PRW was classified as "light in exertion, skilled
work activity" and that her job skills were transferable for "other light, types of
insurance agent work activities."  AR 554-55.  He then testified that there is a
variety of types of insurance sales work at the light exertional level.  *Id.*  Dr. Crystal
also noted that, while there are a number of sedentary insurance positions as well,
the plaintiff's job skills would not be transferable to those positions.  AR 555, 557.
In his response to the plaintiff's hypothetical which assumed an individual with the
plaintiff's work skills and restrictions who was incapable of driving, Dr. Crystal

asserted that an such an individual could still perform other insurance agent jobs and could "readily make an occupational adjustment to office insurance agent work activities . . . ."  AR 125.

Because the court has already held that ALJ Kayser properly found that the plaintiff could perform her PRW, the plaintiff's current argument regarding her transferable work skills is moot.  Even if it were not, however, the court fails to see an inconsistency between Dr. Crystal's hearing testimony and his response to the plaintiff's hypothetical.  In both cases, Dr. Crystal opined that a significant amount of light insurance agent work was available to the plaintiff if she could not perform her PRW; in the latter case, he voiced this opinion even in light of an added restriction, her alleged inability to drive.  While Dr. Crystal did say that the plaintiff's work skills would not transfer to sedentary insurance positions, he never said that these sedentary positions were the *only* ones available to the plaintiff if she was unable to perform her PRW.  The court finds no inconsistency in Dr. Crystal's opinions that would require reversing the ALJ's findings.

**B. The ALJ's Rejection of the Plaintiff's Physician's Opinions**

The plaintiff's second argument – that the ALJ improperly rejected the opinions of her treating and consulting physicians in favor of the opinion of Dr. Charles Hancock, a medical expert – is equally unpersuasive.  The plaintiff places primary emphasis on the opinions of treating physicians, Dr. Anthony McEldowney, Dr. Timothy Brammell, and Dr. Allan Halbert, and consulting physician, Dr. Byron T.

7

Westerfield.  Dr. McEldowney examined the plaintiff on December 21, 2001, and diagnosed her with degenerative disk disease and possible lumbar canal stenosis; degenerative joint disease in her right hip; and mild degenerative joint disease in her left elbow.  AR 208.  He noted that her condition was likely to worsen and that she was unable to perform her current job duties on a full-time basis as that would "simply cause an inhumane type of pain in the back, right hip, and leg."  *Id.*  Dr. McEldowney further stated that returning to work could "put her life in jeopardy." *Id.*  After a follow-up examination on May 15, 2003, Dr. McEldowney opined that "it would be very difficult for [the plaintiff] to sustain the ability to perform job requirements over any period of time."  AR 288.  Dr. Brammell also opined that the plaintiff was disabled as a result of her injuries.  AR 254.  During examinations in 2003 and 2004, Dr. Halbert noted the plaintiff's increased pain in her legs and right elbow and found that she had developed difficulty bearing weight on her right hip and leg.  AR 472-73.  Finally, Dr. Westerfield found that the plaintiff was limited in activities requiring lifting, bending, or prolonged standing or walking; as previously noted, he also stated that it would be difficult for her to drive any distance.  AR 275-76.  He further found that the plaintiff could walk at least two hours and sit at least six hours in an eight-hour work day and that she could occasionally balance, kneel, and stoop.  AR 280-81.

In the hearing held on June 20, 2005, following the remand by the Appeals Council, Dr. Hancock analyzed the findings of Drs. McEldowney and Westerfield

and concluded that their opinions as to the plaintiff's limitations were overly restrictive based on their objective findings.  AR 571-76.  Dr. Hancock felt that the plaintiff could perform medium work with the ability to frequently balance, kneel, stoop, crouch, crawl, and climb ramps and stairs.  AR 576-77.

The plaintiff argues that the ALJ was not entitled to reject the opinions of Drs. McEldowney, Brammell, Halbert, and Westerfield based on the testimony of Dr. Hancock.  The Sixth Circuit has repeatedly held that the opinions of a treating physician are entitled to significant deference.  *See, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Farris v. Sec. of Health and Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985).  An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings.  *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  Further, the opinion of a consulting physician is not entitled to the deference due the opinion of a treating physician.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

While ALJ Kayser's August 11, 2005, opinion does discuss Dr. Hancock's refutation of Dr. McEldowney's and Dr. Westerfield's recommendations at length, the ALJ did not rely solely on Dr. Hancock's testimony in rejecting their opinions, as the plaintiff suggests.  Instead, the record as a whole provides ample support for the ALJ's rejection of the opinions of Drs. McEldowney, Brammell, Halbert, and Westerfield.  For example, the Commissioner refers to reports prepared by Drs.

9

Joseph Thomas and E.C. Curtis on behalf of insurers of the plaintiff which indicate that she was seen getting in and out of her car, removing items from its trunk, and carrying groceries into her home, all without apparent discomfort.  AR 262-68. Surveillance teams also witnessed her removing an item from her porch with a shovel.  AR 266.  An additional consultative examination performed by Dr. Dean Shah resulted in a finding that the plaintiff "would be able to tolerate basic work activity with mainly sitting with intermittent standing, with lifting, carrying, and handling of objects with mild restriction."  AR 470.  Additionally, the plaintiff testified that she occasionally shops, attends church and picnics, dines out with her family, loads and unloads appliances, and walks on her treadmill for up to five minutes at a time.  AR 46, 541-43.  Finally, both the ALJ and Dr. Hancock observed that Dr. McEldowney's restrictive opinions were at least partially based on the plaintiff's subjective reports of pain, not his objective findings.[3]  AR 26, 573. Despite the deference due the opinions of a Social Security claimant's physicians, the court finds that the ALJ's decision to reject the opinions of Drs. McEldowney, Brammell, Halbert, and Westerfield was support by substantial evidence.

In light of the fact that ALJ Kayser found she was limited to light work on September 15, 2003, the plaintiff also questions his finding that she could perform medium work on August 11, 2005.  While the Commissioner is bound, absent

---

[3]The court also notes that Dr. Brammell's statement that the plaintiff could not perform her past employment appears to be based in part on her allegation that she "[did] not feel" she could do so.  AR 254.

10

changed circumstances, by a final decision concerning a claimant's entitlement to benefits, *see Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), an ALJ's decision is not final when it is later vacated and remanded for further proceedings, as occurred here.  *See Wireman v. Comm'r of Soc. Sec.,* 60 Fed. Appx. 570, 571 (6th Cir. 2003).  ALJ Kayser's first decision never became final, and, indeed, he even referred to and incorporated his earlier decision into his subsequent one.  AR 25.  The court holds that the ALJ's finding that the plaintiff could perform medium work after earlier determining that she was limited to light work was not erroneous.

### C. The ALJ's Reasons for Rejecting the Plaintiff's Physician's Opinions

An ALJ must give good reasons for rejecting the opinion of a treating physician.  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  Despite the plaintiff's claims to the contrary, ALJ Kayser met this requirement.  ALJ Kayser discussed in detail the testimony of Dr. Hancock and its applicability to the opinions of Drs. McEldowney and Westerfield.  AR 26-27.  He also clearly stated his reasons for rejecting the results of Dr. McEldowney's residual-functional-capacity test.  AR 25.  Finally, in his September 15, 2003, opinion which was incorporated into his later decision, the ALJ discussed at length the evidence that conflicted with the plaintiff's treating physicians' opinions and cited case law regarding the propriety of rejecting a treating physician's opinion.  AR 45-49.  Under the circumstances, the court finds that the ALJ provided appropriate justifications for rejecting the opinions

of the plaintiff's treating physicians.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE

6) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment

(DE 5) is **DENIED**.

Signed on January 20, 2007

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY